SCOTT N. SCHOOLS (SC 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-6927

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IFRAN ALI, ) | No. C 07-4700 MMC |
| ) Petitioner, ) | |
| ) v. ) | |
| ) ANTHONY M. AIELLO, Assistant Field ) Office Director, San Francisco District ) Office, U.S. Immigration and Customs ) Enforcement; ANTHONY S. MURRY, ) Immigration Judge, Executive Office for ) Immigration Review; JULIE MYERS, ) Assistant Secretary, U.S. Immigrations and ) Customs Enforcement; MICHAEL ) CHERTOFF, Secretary, Department of ) Homeland Security; PETER D. KEISLER,* ) Attorney General of the United States; ) CAPTAIN MARK CHANDLESS, Warden, ) Yuba County Jail, ) ) Respondents. ) | GOVERNMENT'S RETURN |

## I. INTRODUCTION

Petitioner Ifran Ali ("Petitioner"), a citizen and native of Fiji, asks the Court to order his release from immigration custody. Petitioner argues that he has been denied due process, and that his most recent conviction does not involve moral turpitude. The writ should be dismissed because

---

*Pursuant to Fed. R. Civ. P. 25(d)(1), Peter D. Keisler is substituted for his predecessor, Alberto Gonzales, as the United States Attorney General.

GOVERNMENT'S RETURN
C 07-4700 MMC

Petitioner has failed to exhaust administrative remedies, and has filed his habeas petition in the wrong venue. Moreover, to the extent Petitioner challenges his removability, his claims are barred by the REAL ID Act of 2005. Contrary to Petitioner's assertions, his due process rights have not been violated. Accordingly, the Petition for a Writ of Habeas Corpus should be denied.

## II. FACTS

In 1989, Petitioner entered the United States as a tourist, and failed to leave. Petition, p. 6. Nearly ten years later, Petitioner applied for lawful permanent residency; on January 19, 2000, the legacy Immigration and Naturalization Service ("INS")[1] interviewed Petitioner on his application. Exh. A. Just over a month later, the San Mateo County District Attorney charged Petitioner with stealing from his employer, in violation of California Penal Code § 487(a). Exh. B. On August 18, 2000, the legacy INS requested from Petitioner documents relating to his February arrest. Exh. C. On September 13, 2000, Petitioner pled to the criminal charge as a felony, and was sentenced to eight months in prison. Exh. B.

On April 2, 2001, the legacy INS denied Petitioner's application for permanent residency. Exh. D. The agency notified Petitioner that he had failed to submit any documents in response to the August 2000 request, and informed him that he should depart the United States immediately. Id. However, Petitioner did not depart; instead, he later applied for asylum. Exh. E. The adjudicating asylum officer notified Petitioner that he had failed to establish eligibility for asylum, and referred the case to an immigration judge. Id. Immigration and Customs Enforcement ("ICE") initiated removal proceedings against Petitioner by issuing a Notice to Appear. Exh. F. ICE charged Petitioner with removability pursuant to 8 U.S.C. § 1227(a)(1)(B), as an alien who has remained in the United States for a period longer than permitted. Id.

On March 10, 2004, the San Mateo County District Attorney charged Petitioner with false personation, in violation of California Penal Code § 529(3). Exh. G. On December 30, 2004, Petitioner failed to appear to face the charge against him. See Petition, Criminal Docket Sheet, July

---

[1] On March 1, 2003, the former Immigration and Naturalization Service was abolished, and the Department of Homeland Security and its Bureau of Immigration and Customs Enforcement assumed responsibility for enforcement of immigration laws. 6 U.S.C. § 202(3).

1  26, 2007. Although Petitioner later pled to the offense, he failed to appear for sentencing. Id. Two
2  and a half years after being charged, Petitioner was finally sentenced for this second offense. Exh.
3  H. Regardless, consistent with his prior actions, he failed to appear for the program imposed by the
4  trial court. Id. He was finally incarcerated on June 6, 2007. See Petition, Criminal Docket Sheet,
5  July 26, 2007.

6  On July 5, 2007, an ICE agent interviewed Petitioner at the San Mateo County Jail, and
7  determined that he should enter ICE custody. Exh. H. The ICE agent believed that Petitioner's
8  record established that he represented a flight risk. Id. ICE determined that Petitioner was not
9  eligible for bond. Exh. I. On July 23, 2007, an immigration judge ("IJ") found that Petitioner was
10 subject to mandatory detention, and denied his application for bond redetermination. Exh. J.
11 Petitioner appealed that decision to the BIA. Id. His bond appeal remains pending. He filed the
12 instant petition just thirty-six days after appealing the IJ's bond decision. Petition, pp. 1, 7.

### III. ANALYSIS

#### A. PETITIONER HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Petitioner admits that his bond appeal remains pending before the BIA. See Petition, p. 7. It is axiomatic that a petitioner should exhaust administrative remedies before challenging government actions through the vehicle of a habeas petition. Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001). Here, where Petitioner has filed his writ before the BIA has ruled, it cannot be held that his administrative remedies have been exhausted. The Ninth Circuit has declared:

> District courts are authorized by 28 U.S.C. § 2241 to consider petitions for habeas corpus. That section does not specifically require petitioners to exhaust direct appeals before filing petitioners for habeas corpus. However, we require, as a prudential matter, that petitioners exhaust available judicial and administrative remedies before seeking relief under section 2241.

Id.; see also Acevedo-Carranza v. Ashcroft, 371 F.3d 539, 541 (9th Cir. 2004). The appellate court has explained that "[t]he exhaustion requirement avoids 'premature interference with the agency's processes' and helps compile a full judicial record." Liu v. Waters, 55 F.3d 421, 424 (9th Cir. 1995), quoting Roque-Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir. 1985). "Lower courts are, thus, not free to address the underlying merits without first determining the exhaustion requirement has been satisfied or properly waived." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004). The

1  BIA should be given the first opportunity to consider Petitioner's arguments. Because Petitioner
2  has failed to exhaust his administrative remedies, his petition should be dismissed. See Reyna v.
3  Copenhager, No. C 07-4270 MMC, 2007 WL 2504983, at *1 (N.D. Cal. Aug. 31, 2007) (requiring
4  exhaustion); Torres v. Shiltgen, No. C 99-0117 MJJ, 1999 WL 179689, at *2 (N.D. Cal.
5  Mar. 26, 1999) (denying habeas petition for failure to exhaust administrative remedies where writ
6  was filed before BIA ruled on bond appeal).

7       B.     PETITIONER HAS FILED HIS PETITION IN THE WRONG VENUE

8       Courts have been clear: a petitioner for a writ of habeas corpus mus file his writ in the district
9  in which he is confined. Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004). This simple rule "serves
10 the important purpose of preventing forum shopping by habeas petitioners." Padilla, 542 U.S. at
11 447. Here, Petitioner is detained in Yuba County, which lies in the Eastern District of California.
12 See Petition at p. 6. Thus, at a minimum, his Petition should be transferred to that district. See Tri
13 v. INS, C 98-3981 EDL, 1998 WL 827557, at *1 (N.D. Cal. Nov. 20, 1998) (transferring case from
14 Northern District of California to Eastern District of California, where alien was held, even though
15 his immigration proceedings were conducted in Seattle, Washington).

16      C.     THE COURT'S REVIEW IS CONFINED TO PURE ISSUES OF DETENTION

17      On May 11, 2005, the President signed into law the "Emergency Supplemental
18 Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005," Pub. L. No.
19 109-13, 119 Stat. 231. Division B of the Act consists of the "REAL ID Act." Section 106 of the
20 REAL ID Act amends a portion of 8 U.S.C. § 1252, and clarifies the scope of judicial review of
21 removal orders. Pursuant to section 106, a petition for review to the court of appeals is the exclusive
22 means of review of an administrative order of removal, deportation, or exclusion. REAL ID Act
23 § 106(a).

24      In this case, there is not yet a final order of removal; however, the REAL ID Act allows
25 habeas review only over challenges to detention that are independent of challenges to removal. See
26 H.R. Rep. No. 109-72 (2005), reprinted in 2005 U.S.C.C.A.N. 240, 300 (stating "section 106 would
27 not preclude habeas review over challenges to detention that are independent of challenges to
28 removal orders. Instead, the bill would eliminate habeas review only over challenges to removal

1  orders.") (emphasis added).  Accordingly, the Court's decision is confined to the issue of whether

2  Petitioner's detention is lawful under <u>Demore v. Kim</u>, 538 U.S. 510 (2003) and <u>Tijani v. Willis</u>, 430

3  F.3d 1241 (9th Cir. 2005).

4       Petitioner argues that his second offense is not a crime involving moral turpitude. Petition,

5  p. 18.  However, that argument goes directly to the issue of removability, regardless of whether

6  Petitioner is currently charged under 8 U.S.C. § 1227(a)(2)(A)(ii).  A decision by the Court that

7  Petitioner's second conviction does not involve moral turpitude might interfere with any future

8  decision by ICE to amend the charges of removability to include a new basis for removal.  Thus,

9  Petitioner's claim is barred because a decision that Petitioner's second offense does not involve

10 moral turpitude would effectively be a ruling on removability.  <u>See</u> Petition, p. 18; <u>Matter of Kotliar</u>,

11 24 I&N Dec. 124, 126 (BIA 2007) (alien may be subject to mandatory custody, regardless of

12 whether he is charged with removability on the same ground).  Under the REAL ID Act, such

13 decisions are beyond the bounds of the Court's jurisdiction.  REAL ID Act § 106.

14     D.    <u>PETITIONER HAS RECEIVED THE PROCESS HE IS DUE</u>

15      Petitioner challenges the legal standard applied by the IJ. <u>See</u> Petition, p. 16.  He argues that

16 the process set forth in <u>Matter of Joseph</u> "is exactly the opposite of what due process requires." <u>See</u>

17 Petition, p. 9.  Petitioner has been provided with a "<u>Joseph</u>" hearing, contrary to his implication that

18 he has not received such a hearing.  <u>See</u> Exh. J; Petition, p. 22.  Thus, he asks this Court to reach the

19 question left unanswered in <u>Demore v. Kim</u>, 538 U.S. 510, 514 n.3 (2003): whether the procedure

20 set forth by the BIA is adequate.

21      The Ninth Circuit has not addressed this issue in a published opinion,[2] except through a

22 concurrence  in <u>Tijani v. Willis</u>, 430 F.3d 1241, 1242 (9th Cir. 2005) (Tashima, J., concurring).

23 Even if this Court were to be persuaded by that concurrence, the facts here are starkly

24 distinguishable from those in <u>Tijani</u>.  Petitioner has been provided a hearing in which an IJ

25

26      [2]However, on January 25, 2007, the Ninth Circuit addressed the procedures followed for
discretionary detention under § 1226, and held that where the alien was provided an individualized
27 bond hearing and individualized custody review, the alien's detention did not violate procedural due
process requirements.  <u>Beqir v. Clark</u>, 220 Fed. Appx. 469, 471 (9th Cir. 2007).
28

GOVERNMENT'S RETURN
C 07-4700 MMC                                   5

1  considered his argument and concluded that he is subject to mandatory detention. Exh. J.
2  Furthermore, here, unlike Tijani, Petitioner has admitted that his first offense renders him
3  removable. Petition, p. 8; Tijani, 430 F.3d at 1247 (Tashima, J., concurring) ("Only those
4  immigrants who could not raise a 'substantial' argument against their removability should be subject
5  to mandatory detention."). Because Petitioner admits that he is removable on the basis of his first
6  offense, and it seems unlikely that the courts will take anunduly long period of time to resolve his
7  case, Petitioner's arguments fail. See Tijani, 430 F.3d at 1244 (Tashima, J., concurrence) (stating
8  that Tijani was convicted of offense that had never been found to trigger mandatory detention).

9  Moreover, Petitioner's argument appears to be that because his efforts to fight removal may
10 take "many months," he should not be subject to detention during that time. Petition, p. 15.
11 However, the time frame described by Petitioner is well below the protracted proceedings at issue
12 in Tijani, and he has admitted that he is removable on the basis of his first conviction. Id., p. 8.
13 Should Petitioner's efforts fail at the administrative level, and should he seek a stay of removal from
14 the Ninth Circuit, Petitioner's continued detention would be voluntary. Cruz-Ortiz v. Gonzales, 221
15 Fed. Appx. 531, 2007 WL 580670, at *1 (9th Cir. Feb. 22, 2007); see also Bernal v. Chertoff, No.
16 06cv2184 JAH, 2007 U.S. Dist. LEXIS 61688, at *6-7 (S.D. Cal. August 22, 2007) (finding that
17 because alien voluntarily chose to remain in detention while pursuing his appeal, he was not entitled
18 to release).

19  E.  PETITIONER IS SUBJECT TO MANDATORY DETENTION

20  The Immigration and Nationality Act, codified at 8 U.S.C. § 1101, et seq., provides that
21 certain criminal aliens shall be taken into custody. 8 U.S.C. § 1226(c)(1). As pertains to Petitioner,
22 § 1226(c)(1) provides that the Department of Homeland Security ("DHS") shall detain any alien
23 who is inadmissible by reason of having committed any offense covered in §§ 1182(a)(2) and
24 1227(a)(2)(A)(ii). Id. Thus, Petitioner is subject to mandatory detention as an alien convicted of a
25 crime involving moral turpitude, as well as an alien convicted of two or more crimes involving
26 moral turpitude.

27  In Kim, the United States Supreme Court examined the history behind the mandatory
28 detention provisions of 8 U.S.C. § 1226. Kim, 538 U.S. at 518-20. The Court found that "Congress

1  adopted this provision against a backdrop of wholesale failure by the INS to deal with increasing
2  rates of criminal activity by aliens." Id. at 518.  In addition, "Congress [] had before it evidence that
3  one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's
4  failure to detain those aliens during their deportation proceedings." Id. at 519. Indeed, the statistics
5  demonstrated that "[o]nce released, more than 20% of deportable criminal aliens failed to appear for
6  their removal hearings." Id. Thus, the Court held that "[d]etention during removal proceedings is
7  a constitutionally permissible part of that process." Id. at 531.  Here, the record reveals that
8  Petitioner falls precisely into the category of aliens of concern to Congress. When charged with a
9  minor crime, Petitioner repeatedly failed to appear in criminal court. Petition, Criminal Docket
10 Sheet, July 26, 2007.

11        The application of Kim is not affected by the Ninth Circuit's recent decision in Tijani. In
12 that mere three paragraph majority opinion, the appellate court declined to set any precise limit on
13 the Government's detention authority under 8 U.S.C. § 1226(c) and Kim, but rather ruled that under
14 the circumstances of his protracted proceedings, Tijani's detention of two years and eight months
15 required that he be granted a bond hearing before an immigration judge. Tijani, 430 F.3d at 1242.
16 Here, Petitioner has been detained for less than three months; accordingly, he has been detained for
17 a fraction of the time contemplated by Tijani. See Exh. H. Moreover, there are no indications that
18 his proceedings will last nearly as long as the proceedings at issue in Tijani. He admits he has a
19 merits hearing scheduled for December 13, 2007. Petition, Declaration of Robert Jobe. Thus, it
20 seems likely that the first stage of the proceedings will be concluded within the next few months.
21 As an alien convicted of a crime involving moral turpitude, and as an alien convicted of two or more
22 crimes involving moral turpitude, Petitioner is subject to mandatory detention. 8 U.S.C.
23 § 1226(c)(1)(A), -(B).
24 ///
25 ///
26 ///
27 ///
28 ///

## IV.   CONCLUSION

For the foregoing reasons, Respondents respectfully request the Court to deny the Petition for a Writ of Habeas Corpus.

Dated: October 9, 2007                                Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

_____/s/_____
MELANIE L. PROCTOR
Assistant U.S. Attorney
Attorneys for Respondents